UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OCULUS ONE LLC, et al.,<br><br>Defendants. | CASE NO. C22-1189-KKE<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING DEFENDANTS' MOTION TO AMEND ANSWER |

This matter comes before the Court on Defendants' motion to stay proceedings, motion for leave to file amended answer, and request for Rule 16 conference. Dkt. No. 45. For the following reasons, the Court grants Defendants' motion to stay and denies Defendants' motion for leave to file amended answer. In light of the Court's order, a Rule 16 conference is not necessary at this time.

### I. BACKGROUND

This is an insurance coverage dispute arising out of claims asserted against Oculus One LLC d/b/a Oculus Surveillance ("Oculus"), Evergreen Market (Renton North), Inc. ("Evergreen Market"), and Michaeux Rashad Ervin (collectively "Defendants") in a matter filed in King

ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING DEFENDANTS' MOTION TO AMEND ANSWER - 1

County Superior Court entitled *Zebelum Annu El v. Evergreen Market (WA) Inc., et al.*, Case No. 22-2-15040-8 (hereafter referred to as the "Underlying Lawsuit").

Plaintiff Kinsale Insurance Company ("Kinsale") issued a Commercial General Liability Policy to Oculus for the policy period June 22, 2019, to June 22, 2020 (the "Policy"). Dkt. No. 44-2. During the relevant time, Oculus provided security services to Evergreen Market. Dkt. Nos. 29 ¶ 4.6, 45 at 2. Mr. Ervin worked for Oculus at Evergreen Market. *Id.*

On December 16, 2021, Plaintiff in the Underlying Lawsuit, Zebelum Annu El, allegedly suffered injuries after Mr. Ervin physically removed Mr. Annu El from Evergreen Market. Dkt. No. 44-1 ¶¶ 4.5-4.16. On January 11, 2021, Mr. Annu El's attorneys submitted a demand to Evergreen Market. Dkt. No. 29 ¶ 4.13. On March 10, 2021, after Evergreen Market tendered the claim to its own insurer, Evergreen Market's insurer tendered the claim to Kinsale. Dkt. No. 4 ¶ 8.

On September 16, 2022, Mr. Annu El filed the Underlying Lawsuit arising out of the incident at Evergreen Market. Dkt. No. 44-1. Mr. Annu El brought a claim for negligence against all Defendants; a claim for negligent training and supervision against Evergreen Market and Oculus; and claims for violations of the Washington Law Against Discrimination ("WLAD") and the Washington Consumer Protection Act ("CPA") against Evergreen Market. *Id.* ¶¶ 5.1-8.9. According to public records, the Underlying Lawsuit is set for a jury trial to begin April 1, 2024.

On August 26, 2022, Kinsale filed this case seeking a declaratory judgment that it does not owe a duty to defend or indemnify Defendants under the Policy. Dkt. No. 1. On November 15, 2022, Kinsale agreed to defend Oculus under a reservation of rights. Dkt. No. 44-4. On December 23, 2022, Kinsale agreed to defend Evergreen Market under a reservation of rights. Dkt. No. 44- 5. On January 4, 2023, Kinsale filed its Second Amended Complaint, the operative complaint. Dkt. No. 29. The bench trial for this matter is currently set for June 10, 2024. Dkt. No. 42.

In its August 16, 2023 motion for summary judgment, Kinsale seeks a ruling that "there is no coverage available to the defendants" under the Policy, thus Kinsale "no longer owes a duty to defend." Dkt. No. 43 at 2.  As to Mr. Ervin, Kinsale argues there is no coverage under the Policy because: (1) there was not an "occurrence" as defined in the Policy (*id*. at 10–11); (2) coverage is excluded under three separate subparts of the Assault and Battery Exclusion (*id.* at 11–15); and (3) coverage is excluded under the Expected or Intended Injury Exclusion (*id.* at 15–16).  Kinsale also argues that there is no coverage under the Policy for Evergreen Markets and Oculus because coverage for the negligent supervision and training claim is excluded under three separate subparts of the Assault and Battery Exclusion (*id.* at 16–19).

On August 22, 2023, Defendants filed this motion to stay and for leave to file an amended answer.  Dkt. No. 45.  Defendants request to stay this action pending the conclusion of the Underlying Lawsuit because "to defend in this suit, Defendants will need to make arguments giving credence to positions that it wholly refutes in the underlying litigation."  *Id.* at 5.  Specifically, in the Underlying Lawsuit, Defendants intend to file a dispositive motion arguing the court should dismiss the case as untimely under the two-year statute of limitations for assault.  *See id.*; Dkt. No. 48 at 6.  Defendants also seek leave to file an amended answer to assert a counterclaim for bad faith against Kinsale.  Dkt. No. 45 at 6–7.

On August 28, 2023, the Court stayed the briefing on Kinsale's motion for summary judgment until the Court resolves the motion to stay.  Dkt. No. 47.

## II.   ANALYSIS

**A. The Motion to Stay is Granted.**

A district court has discretionary power to stay proceedings before it.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort

for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Ali v. Trump*, 241 F. Supp. 3d 1147, 1151 (W.D. Wash. 2017) (noting that the power to stay proceedings comes from the power of every court to manage the cases on its docket). Economy of time and effort is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.

When considering a motion to stay, a court weighs a series of competing interests: (1) the possible damage that may result from the granting of the stay; (2) the hardship or inequity that a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55); *see also Lockyer*, 398 F.3d at 1109–10. Here, while the first factor counsels against a stay, the remaining factors support it.

1. <u>Kinsale may suffer damage from granting the stay.</u>

As Kinsale argues, and Defendants fairly concede, the first consideration weighs against granting the motion to stay. It is possible that a stay will damage Kinsale. Dkt. No. 48 at 5. "[A]n insurer may be prejudiced by having to pay defense costs in a case where there may be no duty to defend if the stay is granted." *See Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926JLR, 2014 WL 358419, at *3 (W.D. Wash. Jan. 31, 2014) (cleaned up); *see also Or. Mut. Ins. Co. v. Ham & Rye, LLC*, No. C10-579RJB, 2010 WL 2787852, at *4 (W.D. Wash. July 14, 2010) (insurer has an "interest" in not continuing to represent insured if no defense is owed). Here, Kinsale argues it is "defending the Underlying Lawsuit on behalf of three defendants and is receiving monthly legal bills for the defense of claims that it believes not to be covered." Dkt. No. 48 at 5. As such, Kinsale argues it will suffer prejudice "[t]o the extent … Kinsale is forced to defend an uncovered claim[.]" *Id.* While this may be true, damage to Kinsale is not certain because

it remains possible that the Policy provides coverage for some portion or all of the claims in the Underlying Lawsuit.

> 2. <u>The Defendants will suffer prejudice if required to defend this matter on the merits before the completion of the Underlying Lawsuit.</u>

The second consideration weighs in favor of granting the motion to stay. Defendants argue that denying the motion to stay would prejudice them because "Defendants will be forced to take positions that directly contradict those made in the underlying suit," specifically whether the injuries alleged in the Underlying Lawsuit were intentional or not. Dkt. No. 45 at 5. Defendants also argue they could respond to Kinsale's motion for summary judgment with "alternative liability theories that Plaintiff [in the Underlying Lawsuit] could assert, that do not depend on physical removal[,]" which would benefit the plaintiff in the Underlying Lawsuit, and thus additionally prejudice Defendants. Dkt. No. 49 at 2.

Kinsale first counters that denying the stay will not prejudice Defendants because coverage, and thus its motion for summary judgment, can be determined by merely analyzing the complaint in the Underlying Lawsuit and the Policy. Dkt. No. 48 at 6. This argument is undercut by the fact that Kinsale's motion for summary judgment does not solely rely on the allegations in the Underlying Lawsuit. To the contrary, Kinsale supports its motion for summary judgment with reference to assertions about its own investigation and the conclusions reached as a result of it. *See* Dkt. No. 43 at 14–15, 17–18.

Kinsale next argues that Defendants' statute of limitations defense in the Underlying Lawsuit already "presumes the Defendants believe Mr. Annu-El's injuries were the result of an assault by Mr. Ervin" so any claim of prejudice is "moot." Dkt. No. 48 at 6. In principle, the Court agrees that the two lawsuits could continue simultaneously if the coverage dispute was a purely legal question based on undisputed (or already established) facts, or if the factual issues

ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING DEFENDANTS' MOTION TO AMEND ANSWER - 5

were unrelated to the Underlying Lawsuit. But that is not the case here. In both this matter and the Underlying Lawsuit, the parties dispute whether Mr. Annu El's injuries were caused by negligence or an assault. And, as concisely explained by Defendants, the disputed facts in each lawsuit are undoubtedly related:

> If Defendants make arguments in this litigation that the underlying plaintiff's claims may not arise from assault in an effort to refute Kinsale's contention that it is not obligated to defend or indemnify under an assault exclusion in the Policy, that will undoubtedly undermine Defendants' defense in the underlying litigation.

Dkt. No. 45 at 5. Further, Defendants have not yet filed their renewed motion for summary judgment on the assault statute of limitations in the Underlying Lawsuit, so the issue of whether and to what extent Defendants could be estopped from raising certain arguments here is premature.[1]

Kinsale requests, at minimum, the Court allow the coverage dispute to continue on the "question of the application of the harmful or offensive contact exclusion and the claims based on negligent supervision." Dkt. No. 48 at 7. As discussed above, however, Defendants would suffer prejudice if forced to argue the harmful or offensive conduct exclusion does not apply, while also arguing the statute of limitations for assault should govern. The Court also rejects Kinsale's argument that "coverage issues pertaining to Evergreen Market's and Oculus' alleged negligence have no relevance on the Defendants' position in the Underlying Lawsuit regarding the two-year statute of limitations for assault." Dkt. No. 48 at 8. The Policy's exclusion for "negligent hiring, employment, training, supervision, or retention" is part and parcel of the Assault and Battery Exclusion and only applies when the negligent supervision and hiring is "with respect to" assault, battery, harmful or offensive conduct. Dkt. No. 44-2 at 39. In other words, all Kinsale's arguments

---

[1] While both parties refer to Defendants' unsuccessful initial motion for summary judgment in the Underlying Litigation, neither party has submitted it to this Court, nor has any party briefed estoppel. Additionally, that the initial motion was apparently denied without prejudice further supports Defendants' position that the facts in the Underlying Litigation remain subject to dispute.

ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING DEFENDANTS' MOTION TO AMEND ANSWER - 6

to avoid coverage depend on what type of action caused the injuries in the Underlying Lawsuit. Finally, as Defendants allude to (Dkt. No. 49 at 2), Mr. Annu El has raised additional personal injury and property damage claims that appear from the face of the Complaint to be separate from the alleged physical contact with Mr. Ervin.[2]  *See* Dkt. No. 44-1 at 8–10.

In contrast to the potential damage Kinsale would suffer if the motion to stay is granted, Defendants would surely suffer prejudice if they needed to defend themselves in this action while simultaneously defending themselves in the Underlying Lawsuit.  *See W. Nat'l Mut. Ins. Co. v. Strickland & Sons Excavation LLC*, No. 3:21-CV-05211-BJR, 2022 WL 6800893, at *1 (W.D. Wash. Sept. 1, 2022) (explaining that if the court denied the motion to stay "Defendants would be in the position of having to wage a 'two-front war'"); *Gov't Emps. Ins. Co. v. Gerjets*, No. 19-CV-5912-RJB, 2020 WL 1031295, at *4 (W.D. Wash. Mar. 3, 2020) (same).

3. <u>A stay will serve the orderly course of justice.</u>

The third consideration also weighs in favor of granting the motion to stay.  Both parties agree that findings from the trial court in the Underlying Lawsuit will simplify this coverage suit. *See* Dkt. No. 48 at 6 ("If the Court in the Underlying Lawsuit determines the two-year statute applicable to assault applies, Mr. Annu-El's claims are barred, and it would render this current litigation moot."); Dkt. No. 49 at 4.  Staying this matter also avoids the "minefield of possible prejudice" in merits and discovery motions the Court would need to navigate if it allowed the matter, or part(s) of this matter, to proceed. *See Holmes Weddle & Barcott PC*, 2014 WL 358419, at *5.  Moreover, "it coheres with ordinary notions of common law justice to let the jury find facts first and hear judge-decided issues only after the jury has spoken." *Id.*

---

[2] The parties have not addressed the impact, if any, of the adjudication of Mr. Annu El's WLAD or CPA claims in the Underlying Lawsuit on the coverage issues raised here.  At this stage, the Court offers no opinion on potential coverage for those claims or the relationship between those claims and any other claims in the Underlying Lawsuit or this action.

ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING DEFENDANTS' MOTION TO AMEND ANSWER - 7

Considering all the relevant interests, the Court finds that a stay is appropriate.

**B. The Motion for Leave to Amend Pleadings is Denied.**

Defendants request leave to amend their answer under Federal Rule of Civil Procedure 15(a)(2). Dkt. No. 45 at 7. As noted by Kinsale (Dkt. No. 48 at 1–12), Defendants failed to abide by Local Civil Rule 15, which requires submission of a redline of the amended pleading to show the proposed changes.[3] Accordingly, Defendants' motion for leave to amend their answer is denied without prejudice to refile in accordance with the Local Rules after the Court lifts the stay in this case.

**C. The Request for Rule 16 Conference is Moot.**

Because the Court grants Defendants' motion to stay the case, Defendants' request for a Rule 16 conference to ensure this matter does not prejudice their defense in the Underlying Lawsuit is moot.

### III.   CONCLUSION

The Court GRANTS Defendants' motion to stay (Dkt. No. 45) and VACATES the current case schedule (Dkt. No. 42). The Court DENIES Defendants' motion for leave to file amended answer. Dkt. No. 45. Due to the ordered stay, the Court also TERMINATES Kinsale's motion for summary judgment (Dkt. No. 43), noting Kinsale can refile for summary judgment after the Court lifts the stay.

The Court ORDERS the parties to submit a joint report on the status of the Underlying Lawsuit and any issues remaining in this matter within 10 days of a decision on any dispositive motion in the Underlying Lawsuit, or by March 1, 2024, if no such motions are filed. Upon review

---

[3] Kinsale's arguments to the merits of the bad faith claim are premature. *See* Dkt. No. 48 at 9–10. Additionally, the Court denies Defendants' request "that the Court treat their request as a motion to extend the deadline to file amended pleadings" since neither party briefed such a motion. Dkt. No. 49 at 4.

of the joint status report, the Court will consider any request for a Rule 16 conference and will issue a new case schedule.

Dated this 27th day of October, 2023.

*Kymberly K Evanson*

Kymberly K. Evanson
United States District Judge